**John E. MARKAKIS, Plaintiff,**

v.

**SS VOLENDAM (ex SS Monarch Sun) and S/S VEENDAM (ex S/S Monarch Star), Defendants.**

**No. 79 Civ. 0945.**

United States District Court, S. D. New York.

July 13, 1979.

dam) from October 4, 1976 to August 14, 1977, brought suit against the owners of the vessel. The complaint alleges five causes of action in admiralty: (1) a claim for salvage award to plaintiff and (2) the other crew members, (3) a demand for wages accrued because the owners allegedly failed to pay him for overtime and vacation periods worked by plaintiff, (4) "double wages" due because of the tardy payment of wages, and (5) claims for overtime, vacation, and double wages for the members of the crew of the Monarch Sun.[1] Plaintiff now moves for an order determining that his fifth cause of action be maintained as a class action and for joinder of two crew members as parties plaintiff; defendant has filed a cross-motion to dismiss the third through fifth causes of action. Finding that plaintiff does not allege a legal claim for overtime, vacation, or double wages and that the present suit is not maintainable as a class action, the Court grants defendant's motion and denies plaintiff's motions.

I

Plaintiff argues, and defendant does not dispute, that since the vessel is registered as owned in Panama and flies the flag of that country, the substantive law of Panama governs the basic wage claims (for overtime and vacation pay)[2] and that under appropriate circumstances the federal penalty wages statute entitles seamen serving on foreign ships to "a sum equal to two days' pay for each and every day during which payment is delayed beyond the [statutory] periods, which sum shall be recoverable as wages in any claim before the court."[3] The shipowner, however, vigor-

Herbert Lebovici, New York City, for plaintiff.

Burlingham, Underwood & Lord, New York City, for defendants; William M. Kimball, New York City, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, master of the vessel S.S. Monarch Sun (now known as the S.S. Volen-

1. Plaintiff originally asserted a sixth cause of action, realleging all of the previous factual and legal statements of the complaint, but has consented to drop the cause of action as repetitious.

2. *Lauritzen v. Larsen,* 345 U.S. 571, 585–86, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Schon v. M/V Alexandra B.,* 1973 A.M.C. 702 (E.D.N.Y. Dec. 21, 1972) (citing cases). *Cf. Grivas v. Alianza Compania Armadora, S.A.,* 276 F.2d 822 (2d Cir. 1960) (Friendly, J.).

3. 46 U.S.C. § 596:

The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be

ously asserts that the provisions of law upon which plaintiff relies do not provide relief for the master of a ship.

Defendant's argument is correct with respect to the federal penalty wages statute. Based on Congress' intent in enacting and amending the statute and on the traditional maritime law distinction between the ordinary seaman, who is a " 'ward of the admiralty,' often ignorant and helpless, and so in need of [judicial] protection," and the master of the ship, who "is able in most instances to drive a bargain for himself, and then when the bargain is made, to stand upon his rights,"[4] courts have uniformly held that the penalty wages law is limited to claims by seamen and does not afford recovery of double wages by masters.[5] The issue of the master's entitlement to overtime and vacation pay is more difficult. The Court afforded the parties an opportunity to supplement their submissions concerning Panamanian law under Rule 44.1 of the Federal Rules of Civil Procedure.

■ The pertinent provisions of the Labor Code of Panama are Articles 261 and 262.[6] Since the latter provides that "all the members of the crew of a Panamanian vessel that is engaged in international trade, shall be entitled, *after twelve months of uninterrupted service,* to paid annual vacation leave" (emphasis supplied), and since the pleadings in this case establish that the master served on the Monarch Sun for only ten months, he has no cause of action under Panamanian law for vacation pay. In contrast, Article 261 would, on its face, appear to afford relief for overtime wages whenever plaintiff's "effective work time exceeds the legal limits." Defendant argues, though, that Article 12–A of the Labor Code bars any right for overtime wages: "In cases of employees of trust, the action to claim payment of overtime will prescribe [be barred] in three months counted beginning on the date on which the right arose." The Code elsewhere defines "employee of trust" as one "who performs a service of direction, fiscalization or representation of the employer, when they are of general character within the normal course of the activities of the employer" and states that the master of a vessel is "considered for all legal effects as the representative of the employer . . . and will also enjoy the

---

paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court . . . . .

**4.** *Warner v. Goltra,* 293 U.S. 155, 162, 55 S.Ct. 46, 49, 79 L.Ed. 254 (1934) (Cardozo, J.).

**5.** *Ubilla v. M/V Acaima,* 1975 A.M.C. 620, 621–23 (S.D.Ga. Nov. 8 & 24, 1974); *Ramsey v. M/V Murdock,* 372 F.Supp. 1131 (E.D.La.1974), aff'd mem. sub nom. *Keys v. M/V Murdock,* 546 F.2d 908 (5th Cir. 1977); *Kennerson v. Jane R., Inc.,* 274 F.Supp. 28 (S.D.Tex.1967); *Frezados v. M/V San Bernardino Strait,* 1968 A.M.C. 159, 160–61 (M.D.Fla. Sept. 27, 1967); *Owen v. United States,* 1945 A.M.C. 595, 597 (S.D.N.Y. Apr. 27, 1945); *Brinkman v. Erie & St. Lawrence Corp.,* 182 Misc. 1045, 46 N.Y. S.2d 615 (Sup.Ct.1944). *Cf. Blackton v. Gordon,* 303 U.S. 91, 58 S.Ct. 417, 82 L.Ed. 683

(1938) (masters' wages not protected by 46 U.S.C. § 601).

**6.** These Articles provide as follows:

Article 261. All members of Panamanian vessels engaged in international service, whose effective work time exceeds the legal limits or less because of contractual clauses, shall be entitled to be paid overtime with a surcharge of not less than 25% on the wages accrued.

. . . . .

Article 262. Without prejudice to favorable international maritime usages, all the members of the crew of a Panamanian vessel that is engaged in international trade, shall be entitled, after twelve months of uninterrupted service, to paid annual vacation leave, the duration of which shall be:

1. In the case of the master and officers, as well as the officers or radio telegraph operators, not less than 18 working days per year of service . . . . .

*Cf.* Panama Labor Code Art. 251 (relations between shipowners and employees on ships in international service are governed "especially" by provisions of Articles 261-262 *inter alia* ).

**32**

character of authority in cases and with the powers that common laws attribute him." [7]

■ Plaintiff's own expert on Panamanian law concedes that the master is an employee of trust under the Labor Code; [8] hence, plaintiff's only argument on the issue of overtime wages is that Article 12–A is a "procedural" provision that should yield to the statute of limitations applicable in this Court's forum State, New York. The test to determine whether a statute of limitations provision in foreign law should be applied as the "substantive" law of the case or should yield to the Court's own procedural rules was stated by Judge, later Justice, Harlan in *Bournias v. Atlantic Maritime Co.*: [9] "Was the limitation 'directed to the newly created liability so *specifically* as to warrant saying that it qualified the right'?" [10] Article 12–A is aimed at nothing more than overtime earned by an employee of trust; the Court can imagine few statutes of limitation more specifically directed—both at a narrowly defined right and a small and particularized group of claimants—than this provision of the Labor Code. Accordingly, the Court holds that plaintiff's claim for overtime wages, like those for vacation and penalty wages, is legally insufficient.[11] The third and fourth

causes of action of the complaint are dismissed.

## II

■ Because the plaintiff does not have a personal claim for relief for overtime, vacation, and penalty wages, he cannot be a proper class representative to assert similar claims by the seamen of the Monarch Sun.[12] Therefore, the Court also dismisses the fifth cause of action in the complaint. Plaintiff urges, however, that any insufficiency may be cured by the Court's grant of permissive joinder of two new plaintiffs: Esteban Bilbao, the first mate of the Monarch Sun, and George Illiacopoulos, the vessel's second engineer. Counsel argues that the new plaintiffs could represent the class together with the master and thereby supply the requisite standing to maintain the lawsuit as a class action.

■ An initial problem is that no factual basis has been established, aside from generalizations of the attorney, to assure the Court that the additional plaintiffs will "assert any right to relief . . . in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and that "any questions of law or fact common to all these persons will arise in the action." [13] There is no indica-

**7.** Panama Labor Code Arts. 84, 253 (de la Guardia transl.). *See* First Aff. of Dr. de la Guardia ("Based on the cited Labor Code legal provisions under Panama laws, Masters of vessels are the owners' representatives and as such and due to the service they perform are employees of trust as defined by law, whose claims for overtime are barred if suit therefore is not commenced within three months counted beginning on the last day on which overtime was due.").

**8.** Letter of M. J. Moreno, Jr. (Article 12–A "does bar the Master for overtime payment after 90 days, inasmuch as he is a trust employee").

**9.** 220 F.2d 152 (2d Cir. 1955).

**10.** *Id.* at 156 (quoting *Davis v. Mills,* 194 U.S. 451, 454, 24 S.Ct. 692, 48 L.Ed. 1067 (1904) (Holmes, J.)). *See Kalmich v. Bruno,* 553 F.2d 549, 553–56 (7th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *Ramsay v. Boeing Co.,* 432 F.2d 592 (5th Cir. 1970); *DeWindt v. Hess Oil Virgin Islands Corp.,* 166

Civ. 1973 (D.V.I. May 9, 1978); Restatement, Second, of Conflicts § 143 & Comment (c).

**11.** Plaintiff argues that any finding that Article 12–A bars claims for overtime does not affect his claims for pay when he worked on Sundays or other legal holidays. Yet plaintiff presents the Court with no legal authority, outside of Article 261's general provision for "overtime" pay, that would entitle the Master to extra pay for working on holidays. Moreover, defendant's expert testimony of Dr. de la Guardia, unrebutted by plaintiff, is that "Article 12A of the Panama Labor Code governs prescription of all overtime claims, including overtime for work on Sundays and holidays."

**12.** *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403–04, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); 3B Moore's Federal Practice ¶ 23.04[2] (1978) (citing cases).

**13.** Fed.R.Civ.P. 20(a).

tion that the proposed plaintiffs served on the Monarch Sun at the same time as did plaintiff Markakis. There is no indication that they were denied overtime wages or vacation time.

A more serious problem barring the suggested joinder is the potential conflict of interest between the master and the proposed plaintiffs. The Court is reluctant to order joinder of the claims of the master, "an employee of trust," with those of the men he supervised, particularly in the light of the expert testimony of Dr. de la Guardia that "the master is obligated under Panama law as the employer's representative to see to it that the crew is paid any overtime and vacation pay to which the crew may be entitled." [14] In exercising its discretion, the Court should be sensitive to the rights of the proposed plaintiffs, who may have interests adverse to that of the current plaintiff.[15]

The Court denies plaintiff's motions for class certification and permissive joinder. The defendant is entitled to judgment dismissing plaintiff's third through sixth causes of action.

---

**14.** Second Aff. of Dr. de la Guardia.

**15.** Similarly, the Court would be reluctant to certify a class headed by the master and two seamen, given the potential conflicts of interest. *See Baron v. Commercial & Indus. Bank of Memphis,* 75 Civ. 1274 (LBS) (S.D.N.Y. Aug. 21, 1978); *Mark v. Chessie Sys., Inc.,* 74 Civ. 4553 (WCC) (S.D.N.Y. May 2, 1978); *Hoyt*

*Constr. Co. v. Alside, Inc.,* [1978–2] Trade Cas. (CCH) ¶ 62,243 (D.Minn.1978); *Free World Foreign Cars, Inc. v. Alfa Romeo,* 55 F.R.D. 26, 29 (S.D.N.Y.1972); *United Egg Producers v. Bauer Int'l Corp.,* 312 F.Supp. 319, 321 (S.D.N. Y.1970). *But cf. Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 487–88 (N.D.Cal.1978) (more liberal rule).